**IT IS ORDERED as set forth below:**

**Date: March 25, 2019**

_____

**Barbara Ellis-Monro
U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| IN RE: | |
| MICHAEL GLENN MOSS and RACHEL LEE PETERSON, | CASE NO. 18-41373-BEM |
| Debtors. | CHAPTER 7 |
| BANKERS HEALTHCARE GROUP, LLC, | |
| Plaintiff, | |
| v. | ADVERSARY PROCEEDING NO. 18-4032-BEM |
| MICHAEL GLENN MOSS, | |
| Defendant. | |

### ORDER ON MOTION TO DISMISS

This matter comes before the Court on Defendant Michael Glenn Moss's *Second Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted* (the

"Motion") [Doc. 14].[1] For reasons stated below, the Court denies the Motion as to the 11 U.S.C. § 523(a)(2) claims and grants the Motion as to the 11 U.S.C. § 523(a)(6) claim.

## I.   PROCEDURAL BACKGROUND

On June 13, 2018, Defendant Michael Glenn Moss ("Dr. Moss") and his wife (collectively, the "Debtors") filed a voluntary petition for relief under chapter 7, thereby commencing case number 18-41373 (the "Bankruptcy Case") in this Court. The last day for creditors to object to the dischargeability of their debt in the Bankruptcy Case was September 17, 2018, on which day Bankers Healthcare Group, LLC ("Plaintiff") filed its *Original Complaint to Determine the Dischargeability of a Debt Under 11 U.S.C. § 523* (the "Original Complaint") [Doc. 1] objecting to the dischargeability of its alleged debt. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(I).

Prior to filing its Original Complaint, Plaintiff submitted a proof of claim for $107,429.99 (the "POC"). [Doc. 13 at 7 ¶ 43].

Dr. Moss asserts in the Motion that Plaintiff's *First Amended Complaint to Determine the Dischargeability of a Debt Under 11 U.S.C. § 523* (the "Amended Complaint") [Doc. 13] fails to cure deficiencies in the Original Complaint and that Plaintiff has failed to state a claim upon which relief can be granted. Dr. Moss seeks dismissal of the action with prejudice pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 7012.

In the Amended Complaint, Plaintiff seeks to have its alleged debt declared nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B) and (a)(6). Plaintiff also seeks to recover its attorney's fees and costs in pursuing this adversary proceeding.

---

[1] Unless otherwise indicated, all docket entries refer to this adversary proceeding, Adv. Pro. No. 18-4032-bem.

2

## II.     STANDARD ON A MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In ruling on a 12(b)(6) motion, the court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Lubin v. Markowitz (In re Markowitz)*, No. 14-68061-BEM, 2017 WL 1088273, at *3 (Bankr. N.D. Ga. Mar. 22, 2017) (Ellis-Monro, J.) (quoting *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1379 (11th Cir. 2010)). Legal conclusions, however, need not be accepted as true. *Iqbal*, 556 U.S. at 678 ("Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555).

In addition to the *Twombly/Iqbal* pleading standards that apply to all complaints, complaints that allege fraud are subject to a heightened pleading standard. Bankruptcy Rule 7009 and Rule 9(b) require the plaintiff to "state with particularity the circumstances constituting fraud or mistake." *In re Eden*, 584 B.R. 795, 803 (Bankr. N.D. Ga. 2018) (Diehl, J.) (quoting Fed. R. Civ. P. 9(b) and Fed. R. Bankr. P. 7009). The intent element of fraud may be alleged generally. *Id.* Nondischargeability claims under 11 U.S.C. § 523(a)(2) are subject to the heightened pleading standard enumerated in Bankruptcy Rule 7009 and Rule 9(b). *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758-59 (2018).

3

### III.     FACTS

Because the Court must accept all well-pleaded facts as true at this stage, the Court reproduces the facts from the Amended Complaint below, omitting legal conclusions and general statements of the law.

Dr. Moss is an employed physician at 24 On Physicians, P.C. [Doc. 13 at 2 ¶ 6]. He also operates a sole proprietorship d/b/a Michael Moss, M.D. ("Borrower"). Dr. Moss is also a member and the registered agent for Southern Chic Medical Aesthetics, LLC ("SCMA"). [Doc. 13 at 2 ¶ 7]. SCMA was in operation from June 2017 to May 2018. [*Id.* at 3 ¶ 10]. On or about November 11, 2017, Plaintiff and Borrower entered into a *Financing Agreement (Sole Proprietorship) Promissory Note/Security Agreement/Personal Guaranty* (the "Loan Documents") whereby Plaintiff agreed to make a loan (the "Loan") of $112,245.00 (the "Loan Proceeds") to Borrower in exchange for Borrower's agreement to repay Plaintiff principal and interest payments over 84 months. The Loan was secured by a blanket lien on all of Borrower's assets. [*Id.* at 3 ¶ 13]. As further consideration for the Loan, Dr. Moss executed an absolute and unconditional personal guaranty of his obligations under the Loan Documents. [*Id.* at 3 ¶ 14]. Dr. Moss submitted the written loan application documents (collectively, the "Loan Application") to Plaintiff in an effort to obtain the Loan. [*Id.* at 3 ¶ 15]. In connection with the Loan Application, Dr. Moss made the following written representations to Plaintiff:

> (a) Dr. Moss had no business/practice liabilities;
> (b) Dr. Moss had no equipment loans;
> (c) Dr. Moss owned Stocks/Bonds/IRA/401k totaling $100,000;
> (d) Dr. Moss had no equipment;
> (e) The Debtors' primary residence was worth $525,000;
> (f) The Debtors' investment property was worth $200,000;
> (g) Dr. Moss had no personal property;
> (h) Dr. Moss had no student loans;
> (i) Dr. Moss had no other loans; and
> (j) Dr. Moss' annual personal income was $257,224.74.

4

[Doc. 13 at 3-4 ¶ 15]. Additionally, in applying for the Loan, Dr. Moss executed a *Statement of Intended Primary Purpose of the Loan* dated November 3, 2017 (the "Statement of Intended Purpose") stating that: (i) the Loan was a "commercial loan," (ii) the Loan Proceeds were to be used "primarily for other than personal, family, or household purposes," and (iii) the specific business reason for the Loan and intended use of the Loan Proceeds was "business development." [*Id.* at 4 ¶ 16].

The last payment on the Loan was made May 15, 2018, and the Loan is currently in default and due for the June 2018 payment and thereafter. [*Id.* at 4 ¶¶ 16, 18]. On February 28, 2018, Dr. Moss personally guaranteed an SBA loan to SCMA (the "SBA Loan"). [*Id.* at 6 ¶ 32]. Regarding the SBA Loan, the following facts are alleged:

i) "According to the Debtors' Schedule D, Dr. Moss is a personal guarantor on a SBA loan to SCMA (the "SBA Loan") to the sum of $423,725.00." [*Id.* at 5 ¶ 31].

ii) "Dr. Moss filed this Bankruptcy Case only two months after personally guaranteeing $428,500.00 from the SBA Loan." [*Id.* at 6 ¶ 33].

iii) "Furthermore, according to the SBA Loan, a majority of the $428,500.00 received went to refinance three other six-figure business loans of SCMA." [*Id.* at 6 ¶ 35].

iv) "It is unknown as to when these other business loans were acquired or if Dr. Moss personally guaranteed them as well, because they were paid off by the SBA Loan and therefore not listed on Dr. Moss' schedules." [*Id.* at 6 ¶ 36].

### IV. PLAINTIFF HAS ALLEGED A PLAUSIBLE CLAIM FOR NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A).

Plaintiff has alleged nondischargeability of the Loan pursuant to 11 U.S.C. § 523(a)(2)(A), which provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit" that was obtained by "false pretenses, a false representation, or actual fraud" in a statement that does not concern the debtor or an insider's financial condition is nondischargeable. 11 U.S.C. § 523(a)(2)(A); *see also Appling v. Lamar, Archer & Cofrin, LLP*

5

*(In re Appling)*, 848 F.3d 953, 957 (11th Cir. 2017), *aff'd sub nom Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752 (2018) (stating that §§ 523(a)(2)(A) and (a)(2)(B) are mutually exclusive; "But if a statement is made 'respecting the debtor's . . . financial condition,' then subsection (B) governs."). To prevail on a § 523(a)(2)(A) claim, the creditor must show justifiable reliance on the debtor's false pretenses, false representation, or actual fraud. *Field v. Mans*, 516 U.S. 59, 74, 116 S. Ct. 437, 446 (1995); *accord In re Appling*, 848 F.3d at 957 ("A creditor . . . need prove only justifiable reliance. . . . [In contrast, t]o avoid discharge of a debt induced by a statement respecting the debtor's financial condition, a creditor must show reasonable reliance. . . .")

Plaintiff bases its § 523(a)(2)(A) claim on the Statement of Intended Purpose Dr. Moss signed as part of the Loan Application. The Statement of Intended Purpose reads, in its entirety:

**Statement of Intended Primary Purpose of the Loan**

I, <u>Michael G. Moss,</u> have applied for a commercial loan with Bankers Healthcare Group, LLC ("BHG"). I understand and acknowledge that a "Commercial Loan" is a loan, the proceeds of which are intended by the borrower for use primarily for other than personal, family, or household purposes.

I understand that I will be responsible to use the proceeds of the loan, if funded, in accordance with this "Statement of Intended Purpose" and that BHG has reasonably and justifiably relied on this Statement of Intended Purpose in connection with reviewing and considering my loan application for approval and funding.

The specific business reason I have applied for this loan is as follows:

<u>Business Development</u>

6

[Doc. 1, exh. D] (emphasis in original); *see also* [Doc. 13 at 4 ¶ 16]. Plaintiff has alleged that "[u]pon information and belief,[2] Dr. Moss never underwent the 'business development' as he represented and upon which [Plaintiff] relied upon [*sic*] in extending the Loan. . . . Instead, Dr. Moss used the Loan Proceeds on non-business development purposes, including but not limited to, paying for personal expenses, contributing to retirement funds, and paying down SCMA's other loans that were unknown to [Plaintiff.]" [Doc. 13 at 6 ¶¶ 37-38]. Plaintiff states that "[i]f Dr. Moss had been truthful in his representations . . . [about] his intended use of the Loan Proceeds, then" it "never would have made the Loan." [Doc. 13 at 7 ¶ 46].

> To constitute justifiable reliance, the plaintiff's conduct must not be so utterly unreasonable, in the light of the information apparent to him, that the law may properly say that his loss is his own responsibility. This conclusion, however, does not mean that the reliance must be objectively reasonable. . . . Justifiable reliance is gauged by an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.

*City Bank & Trust Co. v. Vann (In re Vann)*, 67 F.3d 277, 283 (11th Cir. 1995) (internal quotations and citations omitted) (adopting the justifiable reliance standard one month before *Field v. Mans*). Whether or not Plaintiff objectively *should* have used the Statement of Intended

---

[2] The Eleventh Circuit has found that allegations "upon information and belief" may be sufficient to survive a motion to dismiss. "[T]o comply with Rules 8 and 9(b), 'some indicia of reliability must be given in the complaint to support the allegation of' fraud'," such as time, place, and substance of the alleged fraud. *Hill v. Morehouse Med. Assocs., Inc.*, No. 02-14429, 2003 WL 22019936, at *3 (11th Cir. Aug. 15, 2003) (quoting *Lab. Corp. of Am.*, 290 F.3d 1301, 1311 (11th Cir. 2002)). However, even though Rule 9(b)'s specificity requirement usually prohibits allegations of fraud from being based on information and belief, even this "heightened pleading standard may be applied less stringently . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" *Hill*, 2003 WL 22019936, at *3 (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F. Supp. 1040, 1052 (S.D. Ga. 1990)), *reconsideration granted*, 755 F. Supp. 1055, 1058–59 (S.D. Ga. 1990)); *see also United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) ("We have held that when the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the Rule 9(b) standard is relaxed. . . .") Because Dr. Moss's use of the Loan Proceeds is peculiarly within his knowledge or control, these facts may be alleged upon information and belief.

Plaintiff also states that, "according to the SBA Loan, a majority of the $428,500.00 received went to refinance three other six-figure business loans of SCMA." [Doc. 13 at 6 ¶ 35.] However, the support provided for this statement is a citation to a proof of claim which is not attached to the Motion. The Court makes no finding of fact as to whether the SBA Loan was for $423,725, for $428,500 or for some other amount.

7

Purpose to decide to extend the Loan, Plaintiff's allegation that it would not have made the Loan had it known that Dr. Moss did not intend to use the proceeds for business purposes is not unreasonable. Given the knowledge that Plaintiff alleges it had at the time of the Loan Application, it has sufficiently alleged that it justifiably relied on the Statement of Intended Purpose.

There is no dispute that the Loan was a debt of the type contemplated by 11 U.S.C. § 523(a)(2)(A) as "for money . . . or an extension . . . of credit." Therefore, the remaining question is whether Plaintiff has sufficiently alleged that the statements in the Statement of Intended Purpose were "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). The Court finds that it has done so.

Generally, "[r]epresentations as to opinion, expectation or declarations of intention do not relate to existing fact and are not actionable." *Kuper v. Spar (In re Spar)*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994). "Only when the debtor 'does not hold these opinions or utters them with reckless indifference for their truth' can the requisite fraud be found." *Id. (quoting Schwartz & Meyers,* 130 B.R. 416, 423 (Bankr. S.D.N.Y. 1991); *see also, Birmingham Trust Nat'l Bank v. Case,* 755 F.2d 1474, 1476 (11th Cir. 1985) ("[W]e hold that reckless disregard for the truth or falsity of a statement constitutes a 'false representation' under § 523(a)(2)(A) of the Bankruptcy Code."). Opinion, expectation, or intention statements such as those contained in the Statement of Intended Purpose must, therefore, have been made with reckless indifference to the truth to qualify for § 523(a)(2)(A) nondischargeability. This may be shown where, "at the time a representation is made, the debtor has no intention of performing as promised. . . ." *In re Spar*, 176 B.R. at 327 (citing *Matter of Allison,* 960 F.2d 481, 484 (5th Cir. 1992)). In order to prevail on this claim, Plaintiff will need to prove that Dr. Moss had no

8

intention of using the loan proceeds for business development or that he was recklessly indifferent as to his intention to do so. Plaintiff has alleged sufficient facts to survive the Motion on this claim.

Plaintiff has alleged that "Dr. Moss knew at all times . . . that the statements . . . regarding his intended use of the Loan Proceeds were false. . . ." [Doc. 13 at 7 ¶ 46]. Because Plaintiff has alleged that Dr. Moss had no intention of using the Loan Proceeds for business development, the Motion will be denied under 11 U.S.C. § 523(a)(2)(A).

V. **PLAINTIFF HAS PLEADED A PLAUSIBLE CLAIM FOR NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(B) WITH REGARD TO THE PERSONAL GUARANTY.**

In its Count II, Plaintiff seeks nondischargeability under 11 U.S.C. §523(a)(2)(B). Section 523(a)(2)(B) provides that a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive. . . ." is nondischargeable. A statement respecting the debtor's financial condition may concern a single asset. *Appling*, 138 S. Ct. at 1752.

Plaintiff has alleged five statements made in writing by Dr. Moss that could meet the requirements of Section 523(a)(2)(B): (1) Dr. Moss stated that he had no "business/practice liabilities" or "other loans" when in fact he was a personal guarantor on the SBA Loan to his corporation, SCMA [Doc. 13 at 3-4 ¶¶ 15(a), 15(i); *id.* at 5-6 ¶¶ 31-32]; (2) Dr. Moss stated he had real estate valued at $725,000, when Debtors' schedules show real estate valued at $733,382 [*Id.* at 4 ¶¶ 15(e), 15(f); *id.* at 5 ¶ 27]; (3) Dr. Moss stated that he had no personal property when

9

Debtors' schedules show he had personal property jointly with his wife valued at at least $7,382 [*Id.* at 4 ¶ 15(g); *id.* at 5 ¶ 26]; (4) Dr. Moss stated that his annual personal income was $257,224.74, when his scheduled income in 2017 was actually $313,544 [Doc. 13 at 4 ¶¶ 15(j), 21]; and (5) Dr. Moss stated that he had "Stocks/Bonds/IRA/401k" of $100,000, when, "[a]ccording to the Debtors' schedules, they have a little more than $150,000 in their various retirement accounts," after "contributing about $1,000" in total each month to those plans [Doc. 13 at 3 ¶ 15(c); *id.* at 5 ¶¶ 25, 28].[3]

The third element of a § 523(a)(2)(B) claim is reasonable reliance by the creditor on the debtor's misrepresentations. 11 U.S.C. § 523(a)(2)(B)(iii). Plaintiff asserts that "[i]f Dr. Moss had been truthful in his representations to [Plaintiff] of his financial condition, then [Plaintiff] never would have made the Loan." [Doc. 13 at 8].

The Court finds that the inferences necessary to determine that Plaintiff reasonably and detrimentally relied on Dr. Moss's undervaluation of his assets, namely his income, real estate holdings, and personal property, in order to grant the Loan to Dr. Moss are not reasonable. The argument that Dr. Moss misled the Plaintiff into extending him the Loan when he stated that he had "Stocks/Bonds/IRA/401k" of $100,000 but that the Debtors scheduled a little more than $150,000 in their retirement accounts, does not survive the Motion. The Court finds this allegation, like the undervaluations of real estate holdings, personal property and income discussed above, does not support Plaintiff's claims. In effect, Plaintiff argues that, had it known Dr. Moss actually had assets of at least $15,964 greater and annual income $56,319.26 higher than reflected on the Loan Application, it would not have extended the Loan to Dr. Moss. Thus, the Court disagrees that these facts support a reasonable inference of reasonable reliance.

---

[3] Plaintiff also mentions that Dr. Moss stated in writing that he had no student loans, equipment loans, or equipment. [Doc. 13 at 3 ¶¶ 15(b), (d), and (h)], but Plaintiff has not asserted that these statements were materially false.

10

However, the remaining assertions survive the motion to dismiss. Plaintiff's primary argument, that it would not have made the Loan had it known that Dr. Moss was a guarantor on SCMA's SBA Loan and other loans of SCMA, is a plausible one on the facts alleged. Plaintiff is correct that because "SCMA did not apply for the Loan," "Dr. Moss only had to supply [Plaintiff] with the amounts [of SCMA's debt] he was personally liable for at the time of the application." [Doc. 13 at 6 ¶ 39]. But a personal guaranty or guarantees by Dr. Moss in the amount of over $420,000 that was not disclosed on the Loan Application is material and supports the reasonable inference that Plaintiff relied on this omission when extending the Loan to Dr. Moss. These allegations are sufficient to deny the Motion.

## VI. PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER 11 U.S.C. § 523(a)(6).

Plaintiff seeks nondischargeability of its alleged debt as well as attorney's fees and costs pursuant to 11 U.S.C. § 523(a)(6), which provides that debts "for willful and malicious injury by the debtor to another entity or to the property of another entity" are nondischargeable. 11 U.S.C. § 523(a)(6). The Court finds this claim has not been sufficiently alleged to survive the Motion.

The Eleventh Circuit has held that "courts considering motions to dismiss [should] adopt a 'two-pronged approach' in applying [the] principles [in *Iqbal*]: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290, (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). When the legal conclusions in the Amended Complaint are eliminated, the allegations made to support Plaintiff's 11 U.S.C. § 523(a)(6) claim overlap with its §§ 523(a)(2)(A) and (B) claims with the addition of one argument: Plaintiff

11

alleges that "Dr. Moss filed this Bankruptcy Case only two months after" personally guaranteeing the SBA Loan and "only six months after receiving $112,245.00 from [Plaintiff]" [Doc. 13 at 6 ¶¶ 33, 34] and that the timing of the filing of this case and receipt of the Loan Proceeds shows that "Dr. Moss mislead [*sic*] [Plaintiff] as to his financial condition and ability to repay the Loan." [Doc. 13 at 6 ¶ 40].

The Supreme Court has held that § 523(a)(6) claims need not be distinct from those under §§ 523(a)(2)(A) and (B). Willful and malicious injuries for the purposes of 11 U.S.C. § 523(a)(6) may be "the result of fraud" that otherwise falls under § 523(a)(2). *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1588 (2016). These injuries are distinct from the "fraudulent acts" covered by § 523(a)(2)(A), but a plaintiff may recover under either subsection for a fraud that results in willful and malicious injury. *Id.* Accordingly, if the Court finds that the facts alleged in support of the §§ 523(a)(2)(A) and (B) claims also support a claim for willful and malicious injury by Dr. Moss to Plaintiff or Plaintiff's property, the Motion may be denied on this count as well.

### A. Willfulness

Willfulness under § 523(a)(6) refers essentially to intent. The Supreme Court has held that § 523(a)(6) covers only "acts done with the actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974, 977 (1998). These acts may be an intentional tort, such as fraud, or may be a debtor's intentional breach of a contract where there was substantial certainty of harm to the creditor. *In re Kane*, 755 F.3d 1285, 1293 (11th Cir. 2014); *In re Williams*, 337 F.3d 504, 510 (5th Cir. 2003).

The Eleventh Circuit has "conclude[d] that a debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which

12

is substantially certain to cause injury." *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1165 (11th Cir. 1995); *accord In re Kane*, 755 F.3d at 1295 (quoting *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012)). "This means that the debtor must have desired the injury giving rise to the debt, either subjectively or because there is no other plausible inference." *Patriot Fire Prot., Inc. v. Fuller (In re Fuller)*, 560 B.R. 881, 889 (Bankr. N.D. Ga. 2016) (Drake, J.) (internal quotations omitted). For a failure to pay loans, the debtor must have "acted with a specific intent to cause economic injury, or knew injury was substantially certain to result, from his failing to remit payment on the subject loans," for § 523(a)(6) to be indicated. *Washington v. Robinson-Vinegar (In re Robinson-Vinegar)*, 561 B.R. 562, 569 (Bankr. N.D. Ga. 2016) (Baisier, J.).

Plaintiff asserts that "[t]here was an objective, substantial certainty of harm to [Plaintiff] and/or its property because of Dr. Moss' acts or omissions and false statements regarding his financial condition in Dr. Moss' obtaining the Loan." [Doc. 13 at 9 ¶ 62]. It also alleges that, in the alternative, "Dr Moss had a subjective motive to cause harm" to it. [*Id.* at 9 ¶ 63] and that "Dr. Moss intended that [Plaintiff] and/or its property suffer the injury caused by the acts of [*sic*] omissions of Dr. Moss in obtaining the Loan." [*Id.* at 9 ¶ 60]. These conclusory statements merely recite the legal standard for willfulness and do not provide support for the claim.

The only factual allegation, devoid of legal conclusions, that could support willfulness is that "Dr. Moss knew at all times . . . that the statements . . . regarding his intended use of the Loan Proceeds were false. . . ." [*Id.* at 7 ¶ 46]. This does not allege that Dr. Moss desired the injury giving rise to the debt or that he acted with a specific intent to cause economic injury to Plaintiff. No allegation has been made that Dr. Moss knew injury was substantially certain to result to Plaintiff from his misrepresentation or that he knew he would be unable to

13

repay the subject loans. The Motion must therefore be granted as to the 11 U.S.C. § 523(a)(6) claim. The Court will nonetheless analyze the remaining elements of such a claim.

### B. Malice

To establish malice, Plaintiff must show that Dr. Moss's actions or omissions were "'wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will.'" *In re Jennings*, 670 F.3d 1329, 1334 (11th Cir. 2012) (quoting *In re Walker*, 48 F.3d at 1164 (quoting *In re Ikner*, 883 F.2d 986, 991 (11th Cir. 1989)). All allegations in the Amended Complaint that have been made directly about Dr. Moss's malicious intent have been made as legal conclusions. Therefore, the Court must consider the allegations about implied malice.

Malice may be implied where "[t]he very nature of [the debtor]'s actions implies a malefic intent." *Monson v. Galaz (In re Monson)*, 661 Fed. App'x 675, 684 (11th Cir. 2016). In *Monson*, the debtor ran an internet café, which he financed with a loan secured by the computers in the café. The debtor failed to pay the secured debt and absconded with the computers, re-emerging in another county and using the computers to start a different café. The debtor had actual knowledge of the lienholder's interest. The very act of "mak[ing] off with equipment he bought with someone else's money" showed that Monson "knew his actions were wrongful and without just cause." 661 Fed. App'x at 685. In contrast, a "debtor's knowing act of failing to obtain workers' compensation insurance . . . was not the sort of willful and malicious injury required for nondischargeability under § 523(a)(6) because it cannot not be said that the employer intended for the employee to suffer a fall or that the failure to insure led directly to the injury." *Id.* at 685 (internal quotations omitted) (summarizing *In re Walker*, 48 F.3d at 1163-65).

Plaintiff has alleged that malice should be implied in this case because Dr. Moss failed to disclose the SBA Loan on the Loan Application, misrepresented his intended use of the

14

Loan Proceeds, and filed for bankruptcy shortly after obtaining the Loan Proceeds. It is a close question, but the Court finds this case more resembles *Monson* than *Walker*. Unlike the defendant in *Walker*, Dr. Moss could be said to have intended to receive the Loan Proceeds, fail to repay the Loan and then use the Loan Proceeds for a non-business purpose. It can be said that Dr. Moss's failure to repay the Loan and use the Loan Proceeds to invest in his business directly caused Plaintiff's economic injuries in the case at bar. Similarly to the defendant in *Monson*, Dr. Moss had actual knowledge of the Loan and the expected use of the Loan Proceeds. He then failed to pay the Loan and filed for bankruptcy. Although these allegations are not as nefarious as "making off with equipment he bought with someone else's money," these allegations are sufficient to allege malice. However, given the failure to sufficiently allege willfulness, the § 523(a)(6) claim does not survive the Motion.

      In consideration of the foregoing, it is hereby ORDERED that

      The Motion is GRANTED as to the 11 U.S.C. § 523(a)(6) claim and

      The Motion is DENIED as to the remaining claims.

**END OF ORDER**

**Distribution List**

Roberto Bazzani
Weener & Nathan, LLP
5887 Glenridge Drive, Suite 275
Atlanta, GA 30328

David V. Levy
Levy & Zeewy, LLC
1862 Independence Square, Suite D
Atlanta, GA 30338-5136

Michael Glenn Moss
966 Horseleg Creek RD SW
Rome, GA 30165

Michael Glenn Moss
24 Pear Street
Rome, GA 30161

Rachel Lee Peterson
24 Pear Street
Rome, GA 30161

Brian R. Cahn
Brian R. Cahn and Associates, LLC
5 S. Public Square
Cartersville, GA 30120

Bankers Healthcare Group, LLC
c/o Weener & Nathan LLP
5887 Glenridge Dr NE
Suite 275
Atlanta, GA 30328